

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. |
| v. | Violations: Title 18, United States Code, Sections 1343 and 1344 |
| KEISHA SMITH | |

**COUNTS ONE THROUGH FIVE**

1:25-cr-00334
Judge Jeffrey I Cummings
Magistrate Judge David Weisman
Cat 3 Random Assignment

The SPECIAL APRIL 2025 GRAND JURY charges that:

1. At times material to this indictment:

### *The Small Business Administration*

a. The U.S. Small Business Administration ("SBA") was a United States government agency that provided economic support to small businesses.

### *The Paycheck Protection Program*

b. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

c. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses and sole proprietors for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP"). Congress subsequently authorized an additional $465 billion in funding for PPP loans, for a total of about $814 billion.

d. To obtain a PPP loan, a business, sole proprietor, or self-employed individual submitted a PPP loan application, which was signed by the applicant or

an authorized representative of the business. The PPP loan application required the applicants to acknowledge the program rules and make certain affirmative certifications regarding the eligibility of the business, proprietorship, or individual. In the application, businesses, sole proprietors, and self-employed individuals were required to provide, among other things, their number of employees and average monthly payroll. This figure was used to calculate the applicant's eligibility and the amount of money the business could receive under the PPP. Applicants were also required to make good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations.

   e.  To gain access to funds through the PPP, businesses, sole proprietorships, and self-employed individuals applied to financial institutions participating in the PPP and, if approved, received the loans directly from those financial institutions as the lender.

   f.  Participating lenders and the SBA required applicants for PPP loans to provide truthful information about the sole proprietorship, self-employed individual, or business and its owner, including truthful information about the applicant's payroll, income, operating expenses, and how the PPP loan would be used, which information was material to lenders' approval, terms, and funding of loans and the SBA's decision to guarantee the loans.

### *Entities*

   g.  One Promise Land Inc. was an Illinois not for profit corporation incorporated on or about July 24, 2013.

h. One Promise Land of Cairo IL was an Illinois not for profit corporation incorporated on or about August 23, 2017.

i. One Promise Land Consulting NFP was an Illinois not for profit corporation incorporated on or about January 19, 2017.

j. One Promise Land Travels NFP was an Illinois not for profit corporation incorporated on or about January 19, 2017.

k. Unforgotten Hearts II NFP was an Illinois not for profit corporation incorporated on or about January 19, 2017.

l. One Promise Land Property and Preservation Company was an Illinois not for profit corporation incorporated on or about August 2, 2007.

*Defendant*

m. Defendant KEISHA SMITH was a resident of Country Club Hills, Illinois. SMITH was the owner and registered agent of One Promise Land Inc., One Promise Land of Cairo IL, One Promise Land Consulting NFP, One Promise Land Travels NFP, Unforgotten Hearts II NFP, and One Promise Land Property and Preservation Company.

*Lenders*

n. First Midwest Bank and Fifth Third Bank were financial institutions that funded PPP loans to approved borrowers. The deposits of First Midwest Bank and Fifth Third Bank were insured by the Federal Deposit Insurance Corporation.

### *The Scheme to Defraud*

2. Beginning in or around April 2020 and continuing through in or around August 2020, in the Northern District of Illinois, and elsewhere,

KEISHA SMITH,

defendant herein, participated in a scheme to defraud a financial institution, and to obtain money, funds, and property, owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3. It was part of the scheme that SMITH, for the purpose of fraudulently obtaining in excess of $400,000 in PPP funds, prepared and submitted to First Midwest Bank and Fifth Third Bank (the "Lenders"), and caused to be prepared and submitted to the Lenders, at least five PPP loan applications on behalf of One Promise Land Inc., One Promise Land of Cairo IL, One Promise Land Consulting NFP, and One Promise Land Travels NFP (collectively, "the purported PPP borrowers"); which applications contained materially false statements and misrepresentations, including that each purported PPP borrower was a business that employed a specified number of employees, paid a specified average monthly payroll, was in operation on February 15, 2020, and that all PPP loan proceeds would be used only for business-related purposes. SMITH knew at the time that the purported PPP borrowers had no employees or payroll and were not in operation on February 15, 2020, and that she intended to use the loan funds for her personal use and benefit.

4. It was further part of the scheme that, to substantiate the claimed number of employees and payroll of the purported PPP borrowers, SMITH prepared and submitted to the Lenders, and caused to be prepared and submitted to the Lenders, copies of false IRS tax filings (including IRS Forms 941) that fraudulently represented that One Promise Land Inc., One Promise Land of Cairo IL, One Promise Land Consulting NFP, and One Promise Land Travels NFP had paid specified numbers of employees various amounts in wages, tips, and other compensation in tax years 2019 and 2020. SMITH knew at the time that the purported PPP borrowers had no payroll or employees for which federal taxes were paid during that period. SMITH also provided fictitious bank statements to First Midwest Bank on behalf of One Promise Land Inc., One Promise Land of Cairo IL, and One Promise Land Consulting NFP.

5. It was further part of the scheme that, to substantiate the claimed number of employees and payroll of the purported PPP borrowers, SMITH knowingly prepared and submitted, and caused to be prepared and submitted, to the Lenders false and fabricated spreadsheets that purported to document payroll paid by the purported PPP borrowers.

6. It was further part of the scheme that SMITH directed the Lenders to deposit the proceeds of fraudulently obtained PPP loans into bank accounts in the names of several of the purported PPP borrowers, including One Promise Land Inc., One Promise Land of Cairo IL, One Promise Land Consulting NFP, and One Promise Land Travels NFP, which bank accounts SMITH controlled. At times, SMITH opened

bank accounts in the names of the purported PPP borrowers to induce the SBA, the Lenders, and others to falsely believe that the accounts belonged to legitimate and operational businesses.

7. It was further part of the scheme that, through the submission of the false and fraudulent PPP loan applications, SMITH caused the Lenders to disburse approximately $124,085 in PPP loan proceeds into bank accounts that she controlled, and she attempted to fraudulently obtain in excess of $400,000 in PPP loan proceeds.

8. It was further part of the scheme that SMITH misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

9. On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, SMITH, knowingly executed the scheme, and attempted to do so, by submitting and causing to be submitted PPP loan applications, each such application constituting a separate count:

| Count | Date | Description of Act |
|---|---|---|
| One | May 27, 2020 | submitting and causing to be submitted to First Midwest Bank a PPP loan application for One Promise Land Consulting NFP |
| Two | May 27, 2020 | submitting and causing to be submitted to First Midwest Bank a PPP loan application for One Promise Land of Cairo IL |
| Three | May 29, 2020 | submitting and causing to be submitted to First Midwest Bank a PPP loan application for One Promise Land Inc. |
| Four | June 3, 2020 | submitting and causing to be submitted to First Midwest Bank a PPP loan application for One Promise Land Travels NFP |
| Five | August 6, 2020 | submitting and causing to be submitted to Fifth Third Bank a PPP loan application for One Promise Land Travels NFP |

6

In violation of Title 18, United States Code, Section 1344.

## COUNTS SIX THROUGH TEN

The SPECIAL APRIL 2025 GRAND JURY further charges that:

1. The allegations in paragraphs 1(g) through 1(m) of Counts One through Five are incorporated here.

2. Furthermore, at times material to this indictment:

    a. Another source of relief provided by the CARES Act and other pandemic-relief legislation was the expansion of the Economic Injury Disaster Loan ("EIDL") Program, which provided loan assistance (including advances of up to $10,000) for businesses with 500 or fewer employees and other eligible entities. The EIDL Program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue.

    b. To gain access to funds through the EIDL Program, small businesses applied through the SBA via an online portal and application. As part of the EIDL application process, the SBA required applicants to submit truthful information about the applying entity, its owner, and its financial condition prior to the COVID-19 pandemic. This information included the entity's number of employees as of January 31, 2020; the entity's gross revenues and cost of goods sold for the 12-month period prior to January 31, 2020; and the entity's type of business (*i.e.*, a business, an agricultural business, a sole proprietorship, a cooperative, among others); the date on which the business opened; and the date on which the current owner assumed ownership of the entity. Applicants were required to electronically certify that the information provided in the application was true and correct and were

8

warned that a false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

   c.  The SBA required applicants for EIDL loans to provide truthful information about the sole proprietorship, self-employed individual, or business and its owner, including truthful information about the applicant's number of employees, costs of goods sold, and gross revenues, which information was material to the SBA's approval, terms, and funding of loans.

   d.  EIDL funds were issued to small-business applicants directly from the United States Treasury.

   e.  EIDL Advance was a grant program offered together with the EIDL Program. EIDL Advance was designed to provide emergency economic relief to businesses that were experiencing a temporary loss of revenue as a result of the COVID-19 pandemic. The applicant could request consideration for an EIDL advance in an application for an EIDL loan. The amount of the advance issued to the small-business applicant was determined by the number of employees indicated on the EIDL application, at $1,000 per employee, up to $10,000. The number of employees reported by the business was material to the SBA's funding of an EIDL Advance and determination of the amount of the EIDL Advance. If an EIDL advance was issued, the advance did not need to be repaid.

   f.  If an EIDL application was approved by the SBA, the amount of the EIDL loan was determined in part based on the statements in the EIDL

application about the entity's revenues and cost of goods sold for the 12 months prior to January 31, 2020.

   g. EIDL Program loan funds could be used to pay for the ordinary operating expenses and debts of the entity, including payroll, sick leave, production costs, utilities, rent, mortgage payments, continuation of health care benefits, and fixed debt payments.

  3. Beginning in or around April 2020 and continuing through in or around August 2020, in the Northern District of Illinois, and elsewhere,

KEISHA SMITH,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property, in connection with applications for EIDL funds, by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

  4. It was part of the scheme that SMITH, for the purpose of fraudulently obtaining in excess of $1.5 million in EIDL funds, prepared and submitted to the SBA, and caused to be prepared and submitted to the SBA, at least five applications for EIDL loans and advances on behalf of One Promise Land Inc., One Promise Land Travels NFP, Unforgotten Hearts II NFP, and One Promise Land Property and Preservation Company (collectively, "the purported EIDL borrowers"); in which applications she made false statements regarding the entities' gross revenues and costs of goods sold for the 12 months prior to January 31, 2020, and the number of employees employed by those entities as of January 31, 2020. SMITH knew at the

time that the purported EIDL borrowers were not operating companies, had no employees, and did not have the revenues or cost of goods stated in the applications.

5. It was further part of the scheme that SMITH directed the Lenders to deposit the proceeds of fraudulently obtained EIDL loans and advances into bank accounts in the names of several of the purported borrowers, including Unforgotten Hearts II NFP, One Promise Land Property and Preservation Company, One Promise Land Travels NFP, and One Promise Land Inc., which bank accounts SMITH controlled.

6. It was further part of the scheme that, through the submission of the false and fraudulent EIDL loan applications, SMITH caused the SBA to disburse approximately $248,800 in EIDL loan proceeds and advances into bank accounts that she controlled, and she attempted to fraudulently obtain in excess of $1.5 million in EIDL proceeds.

7. It was further part of the scheme that SMITH used the EIDL funds obtained through her submission of fraudulent EIDL applications to make cash withdrawals and transfers, all for her personal use and benefit, and not for purposes related to the business of the purported EIDL borrowers.

8. It was further part of the scheme that SMITH misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

9. On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, SMITH, as set forth below, for the purpose of

executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, listed below, each such writing, sign, and signal constituting a separate count:

| Count | Date | Description of Act |
|---|---|---|
| Six | July 2, 2020 | an electronic transfer of funds in the amount of approximately $10,000 from the SBA to an account ending in x8168 at Bank of America, N.A., which funds represented the proceeds of an EIDL Advance to "Unforgotten Hearts II NFP" |
| Seven | July 2, 2020 | an electronic transfer of funds in the amount of approximately $10,000 from the SBA to an account ending in x8875 at Citibank Federal Savings Bank, which funds represented the proceeds of an EIDL Advance to "One Promise Land Property and Preservation Company" |
| Eight | July 2, 2020 | an electronic transfer of funds in the amount of approximately $10,000 from the SBA to an account ending in x1802 at Fifth Third Bank, which funds represented the proceeds of an EIDL Advance to "One Promise Land Travels" |
| Nine | August 3, 2020 | an electronic transfer of funds in the amount of approximately $149,900 from the SBA to an account ending in x1802 at Fifth Third Bank, which funds represented the proceeds of an EIDL loan to "One Promise Land Travels" |
| Ten | August 17, 2020 | an electronic transfer of funds in the amount of approximately $68,900 from the SBA to an account ending in x1703 at Fifth Third Bank, which funds represented the proceeds of an EIDL loan to "One Promise Land Inc." |

In violation of Title 18, United States Code, Section 1343.

A TRUE BILL:

_____
FOREPERSON

_____
Signed by Michelle Petersen, on behalf of the
UNITED STATES ATTORNEY